UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO. 10-4369 |
| MDI CONSTRUCTION, L.L.C., KION C. DARKSHANI AND MARY D'ANGELO DARKSHANI | SECTION "N" (5) |

## ORDER AND REASONS

Before the Court is Plaintiff/Defendant-in-Interpleader Hartford Casualty Insurance Company's ("Hartford") Motion for Payment of Contract Funds and Attorney's Fees (Rec. Doc. 65). This motion is opposed by Defendant-in-Interpleader Investar Bank ("Investar") as to the payment of contract funds (Rec. Doc. 75) and by Plaintiff-in-Interpleader the Audubon Commission ("Audubon") as to the payment of attorney's fees (Rec. Doc. 76). Defendant in Interpleader the Internal Revenue Service ("IRS") also filed a memorandum in response to the motion (Rec. Doc. 77), indicating that it would assert a claim to the contract funds if the court determined that the funds were due to MDI Construction, LLC ("MDI"), and therefore its creditors, rather than Hartford. Also before the Court is Audubon's Motion to Dismiss Counterclaim Pursuant to Rule 12(b)(6), or, Alternatively, Motion for Summary Judgment (Rec. Doc. 74). This motion is opposed by Hartford (Rec. Doc. 87).

The Court held oral argument on the Motion for Payment of Contract Funds and Attorney's Fees with regard to payment of contract funds on December 21, 2011. At this hearing, Hartford and Investar presented substantive arguments regarding their entitlement to the

funds in question, which are currently in the registry of the Court. The Court presented the following questions to Hartford and Investar to be answered in a supplemental memorandum:

> 1. Is the entitlement to a summary mandamus proceeding granted in Louisiana Revised Statute 38:2191, in conjunction with Louisiana Code of Civil Procedure Article 2592[1], a substantive right rather than a procedural rule?
>
> 2. If so, how does the entitlement to a summary proceeding interact with 28 U.S.C. 1335?
>
> 3. Does *Great American Insurance Company v. Maurin-Piazza, et al.*, 1998 WL 59846, have continuing precedential value after the repeal of the Louisiana Account Receivable Act, La. R.S. 9:3102? What, if any, specific Louisiana statute that is valid today is substantively identical to the repealed Louisiana Accounts Receivable Act, La. R.S. 9:3102?
>
> 4. Was MDI's assignment to Hartford completed on February 19, 2008 when it entered into the Indemnity Agreement, on May 29, 2008 when it entered into the Project on the basis of Hartford's Bonds, or on December 30, 2009 when Hartford filed the UCC-1 financing statement?
>
> 5. What are Hartford's rights to the funds through legal or conventional subrogation? Please discuss Louisiana Civil Code Article 1825.

Hartford and Investar filed supplemental memoranda answering these questions. (Rec. Docs. 95 and 94, respectively). Having considered all filings submitted by the parties, the Court rules as set forth herein.

**I. BACKGROUND**

On or about February 19, 2008, MDI executed and delivered to Hartford an agreement of indemnity in consideration of and as inducement for Hartford's issuance of performance and payment bonds naming MDI as principal in connection with any certain construction project.

---

[1] The Court mistakenly referenced Louisiana Civil Code Article 2592 in its initial questions, but both parties answered the question in reference to Louisiana Code of Civil Procedure Article 2592, as was the Court's intention.

On May 23, 2008, pursuant to a series of loans made to MDI, Investar filed a UCC-1 Financing Statement in East Baton Rouge Parish claiming a security interest in all accounts of MDI.

On May 29, 2008, Audubon, as owner, entered into a contract with MDI, as contractor, for the construction of the Audubon Park – Batture Ball Fields Project ("the Project"). In connection with this project, Hartford, as surety, executed payment and performance bonds numbered 43BSBDU8996 in the penal amount of $3,916,000, whereby Hartford and MDI were bound jointly and severally to the Audubon Commission for the timely and complete performance of the Project.

MDI began working on the Project, but construction was delayed and Hartford took over the completion of the job from MDI in November 2009. On December 30, 2009, Hartford filed a UCC-1 Financing Statement in Orleans Parish claiming a security interest in "any and all sums due or which may become due under any contract including . . . retainage . . . [and] retainage accounts." Exhibit B to Rec. Doc. 75, p. 3(a). The Project was completed on March 4, 2010.

Hartford brought the instant action against MDI on November 19, 2010 seeking indemnification for amounts it paid completing the Project. Hartford states that it has received requests for payment from several parties who have not been properly paid by MDI and has already paid $423,663.79 to these parties, whose claims totaled $760,894.60 at the time of filing. Hartford also claims to have incurred damages, administrative costs, attorney's fees, and other fees of $46,990.94 related to the Project.

MDI answered the complaint, bringing third-party claims against several defendants, including Audubon. MDI alleged that Audubon was withholding contract retainage of around $200,000 which was due on the completed Project. Audubon answered the third-party complaint

asserting a claim of liquidated damages against MDI and Hartford as a result of the delay in the completion of the project.

After all parties asserted their claims in the instant action, Hartford filed suit against Audubon in Civil District Court for the Parish of Orleans, State of Louisiana, arguing that it, rather than MDI, was entitled to the contract balance owed by Audubon of $221,171.50. On November 2, 2011, Audubon filed a Motion to Amend Counterclaim along with a Motion to Expedite Consideration of the Motion to Amend. Audubon sought leave to withdraw its claim for liquidated damages and assert an interpleader action. Magistrate Judge Alma L. Chasez granted both of these motions in a telephone conference with counsel on November 3, 2011. That same day Hartford filed a Motion for Review of Magistrate Chasez's decision to grant the Motion to Amend Counterclaim. Audubon opposed the Motion for Review of Magistrate Decision, and the motion was denied in an Order signed by Judge Martin L.C. Feldman on November 4, 2011.

In its amended counterclaim, entered November 4, 2011, Audubon named Hartford, MDI, Investar and the IRS as Defendants-in-interpleader. Investar bank waived service on November 15, 2011, giving it until January 17, 2012 to answer the complaint.[2] Proof of service on the IRS was filed on November 15, 2011; the IRS has until January 9, 2012 to answer the complaint.[3]

After being granted leave to amend its counterclaim, Audubon filed, on November 3, 2011, a Motion to Deposit Funds into Court Registry in Connection with Interpleader Claim, for Temporary Restraining Order, and for Preliminary Injunction. This motion was opposed by

---

[2]Investar requested an extension of time to file its answer, which the Court granted. *See* Rec. Doc. 99.

[3]IRS requested an extension of time to file its answer, which the Court granted. *See* Rec. Doc. 98.

Hartford. In an Order signed by Judge Feldman on November 4, 2011, the Court granted the Motion to Deposit Funds into Court Registry and granted a temporary restraining order preventing the Defendants-in-Interpleader from filing or further prosecuting any other lawsuits related to the contract funds.

Hartford then filed the instant Motion for Payment of Contract Funds and Attorney's Fees on November 25, 2011. Audubon filed its Motion to Dismiss Counterclaim Pursuant to Rule 12(b)(6), or, Alternatively, Motion for Summary Judgment on December 9, 2011.

On December 1, 2011, the Court heard and granted Audubon's request for a preliminary injunction. Thereafter, the Court issued an order stating that the Court would hear oral argument on Hartford's Motion for Payment of Contract Funds and Attorney's Fees on December 21, 2011.[4] The Court further ordered that any party wishing to oppose Hartford's motion, regardless of whether or not its answer would be due before the hearing date, should do so by December 12. Finally, the Court ordered that any Reply by Hartford be filed on December 15.

Investar filed a substantive opposition claiming its superior right to the contract funds. Audubon filed an opposition relating solely to attorney's fees and asserting no position as to the rightful recipient of the contract funds. The IRS filed an opposition stating that it is not currently asserting a claim to the contract funds; while the IRS does have a claim to any funds due MDI, the agency does not argue that the funds belong to MDI, but rather states that the court must make this determination. MDI failed to file any opposition to Hartford's Motion.[5]

---

[4]The Court specifically limited the oral argument to the issue of the payment of contract funds, ordering that the issue of attorney's fees be considered on the papers.

[5]Because only Investar filed a substantive opposition to Hartford's motion, this memo will focus solely on the arguments of Hartford and Investar. The Court notes, however, that the interpleader will not be resolved should Investar prevail in its arguments. Investar's claim to the funds is based on its alleged security interest in accounts of MDI. As such, Investar's argument

## II. ARGUMENTS OF THE PARTIES

Hartford argues that it is entitled to a summary procedure to recover the retained contract funds, citing Louisiana Revised Statute 38:2191. The statute, as amended in June 2011, states that a public entity failing to make payment on a public contract "shall be subject to mandamus to compel the payment of the sums due under the contract." La. Rev. Stat. Ann. § 38:2191 (2011). While the statute does not mention summary proceeding, Article 2592 of the Louisiana Code of Civil Procedure defines mandamus as a summary proceeding.

Hartford asserts that it is entitled to the remaining contract funds through subrogation such that the funds never passed to MDI; thus, MDI's creditors have no claim to the funds because the retainage never belonged to MDI. Hartford relies on *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141-42 (1962), in which the United States Supreme Court held that a surety was subrogated to the rights of the owner of a public contract such that the surety had a claim to the fund that was superior to the contractor's general creditors when the surety paid for labor and material on a construction project.

On the other hand, Investar argues that Hartford's motion is improper. Investar asserts that while Hartford may be entitled to a state-court summary mandamus procedure under Louisiana Revised Statute 38:2191, the proceedings in this case must be governed by the Federal Rules of Civil Procedure. Investar claims that Hartford's motion requests judgment on the pleadings, citing Federal Rule of Civil Procedure 12(c) for the proposition that a party may move for judgment on the pleadings after the pleadings are closed. Because Investar and the IRS have

---

about its entitlement to the funds is necessarily based on the funds having become an account of MDI. Should the Court find for Investar in the resolution of this motion and find that the funds did become an account of MDI, the Court will then have to decide which creditor of MDI is entitled to these funds. At this time, the competing creditors relevant to this litigation are Investar, the IRS, and Hartford.

not yet answered Audubon's interpleader complaint, the motion is premature. In the alternative, Hartford's motion may be considered a motion for summary judgment under Rule 56. Investar asserts that summary judgment is improper at this time because several issues of material fact exist for which discovery is necessary.[6] Investar also accuses Hartford of filing this motion in an attempt to circumvent the Court's order granting preliminary injunction.

Investar claims that its perfected security interest in the contract retainage outranks Hartford's claim through subrogation. Investar cites the Louisiana First Circuit Court of Appeal in *American Bank and Trust Co. v. Trinity Universal Ins. Co.* for the proposition that "equitable subrogation does not exist in Louisiana." 194 So.2d 164, 168 (La. Ct. App. 1 Cir. 1966). Investar further relies on *Great American Ins. Co. v. Maurin-Piazza*, a case from this Court in which Judge Carr stated that "[e]quitable considerations cannot be permitted to prevail when in conflict with positive written law." No. 87-413, 1988 WL 59846, at *2 (E.D. La. June 7, 1988). Investar argues that Hartford relies on the doctrine of equitable subrogation in asserting its claim to the contract retainage because *Pearlman* discusses equitable subrogation. Investar further asserts that equitable subrogation is in conflict with Article 1827 of the Louisiana Civil Code, which provides that "[a]n obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even without the obligor's consent. That subrogation is subject to the rules governing the assignment of rights." La. Civ. Code. Ann. art. 1827 (2008). Investar interprets this to mean that this case is not governed by equitable subrogation, but rather by Louisiana substantive law on subrogation.

---

[6]Investar asserts that genuine issues of material fact exist precluding summary judgment and that these issues are "later discussed in this Opposition," but fails to engage in any later discussion. Rec. Doc. 75, p. 4. In fact, Investar's opposition reads like a countermotion for summary judgment. Investar highlights no fact issues, but rather explains why it, and not Hartford, is entitled to the contract retainage.

Investar asserts that under Louisiana law, Hartford must demonstrate that MDI forfeited its rights to the contract retainage in order to prove that its right to the contract retainage through subrogation outranks Investar's perfected security interest. Investar again relies on *Great American*, which distinguished *Prairie State Bank v. United States*, 164 U.S. 227 (1896), on the basis that the construction contract in *Prairie State* contained a forfeiture clause. 1988 WL 59846, at *2. Judge Carr found that because the construction contract involved in *Prairie State* contained a clause wherein the contractor forfeited its rights to the retainage in the event of the contractor's non-fulfillment, the surety was subrogated to the owner's rights in the retainage. *Id.* However, because the contract in *Great American* did not contain a forfeiture clause, the surety in that case was subrogated to the rights of the construction company. *Id.* Further, Judge Carr cited the Louisiana Accounts Receivable Act, Louisiana Revised Statute 9:3102, which provided that "[a]n assignee under a valid notice of assignment shall have a superior claim to accounts assigned and their proceeds as against all other creditors whose claims or security arose or are perfected after the filing of the notice of assignment." *Id.* (quoting La. Rev. Stat. § 9:3102).[7] Finally, Judge Carr noted that the surety could have protected itself by reviewing the mortgage records to discover prior assignments but failed to do so. *Id.* at 3. Thus, Judge Carr found that the surety's interest in the contract retainage was outranked by an earlier executed and properly filed assignment of accounts receivable to a bank. *Id.* Because Hartford has not shown any forfeiture clause and because Hartford failed to discover Investar's UCC-1 when Hartford filed

---

[7]The Louisiana Accounts Receivable Act was repealed in 2001. Investar argues that this case is still valid because the repeal of this Act took place after the enactment of the Uniform Commercial Code in Louisiana and the only purpose of the repeal was to eliminate a duplicative law. However, Investar does not, in its original filing or in its supplemental brief in response to the Court's questions, cite to any specific statute containing the substance of repealed La. Rev. Stat. 9:3102.

its own in December 2009, Investar argues that Hartford is subrogated to the rights of MDI and that Investar's perfected security interest in accounts of MDI outranks Hartford's interest.

In response, Hartford first notes that Louisiana Revised Statute 38:2191 does not state that the mandamus action must be filed or must proceed in state court.  *See* La. Rev. Stat. Ann. §38:2191 (2011).  Hartford argues that the allowance for mandamus is not a procedural rule but rather a substantive right of an obligee of a public entity who fails to make payment on a public contract.

Hartford refutes Investar's claim that equitable subrogation is not recognized by Louisiana courts, citing *Lambert v. Maryland Casualty Co.*, wherein the Louisiana Fourth Circuit Court of Appeal cited *Prairie State* and *Pearlman* for the proposition that a surety who completes a contract becomes subrogated to the rights of the owner of the contract.  *See* 403 So.2d 739, 752 (La. Ct. App. 1 Cir. 1981).  Hartford also cites the *Lambert* Court's reference to other Louisiana cases noting the surety's subrogation rights.  *See id.* at 752-53, n. 3.

Hartford asserts that its rights in the contract funds originated on February 19, 2008, the date of the Indemnity Agreement between Hartford and MDI.  Investar's claim to the contract funds arose on May 23, 2008 when Investar perfected its security interest in MDI's accounts by filing its UCC-1 financing statement.  Because it had already assigned the account to Hartford, Hartford claims that *Federal Ins. Co. v. Community State Bank* dictates that MDI was unable to make the later assignment to Investar because MDI could not grant greater rights in the fund than it had.  905 F.2d 112, 116 (5th Cir. 1990).

Finally, Hartford asserts that *Great American* is of little to no precedential value as it is a 1988 case that has never been cited in a published opinion and because it relied on the Louisiana Accounts Receivable Act, which has been repealed.

## III. DISCUSSION

### A. Entitlement to Summary Proceeding

Under Louisiana Revised Statute 38:2191 and Louisiana Code of Civil Procedure Article 2592, Hartford would be entitled to a summary mandamus proceeding in state court. Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (U.S. 1938), Hartford is entitled to the same rights in this court as that to which it would be entitled in state court. As such, the Court finds that Hartford is entitled to a summary proceeding to determine its rights to the contract funds deposited in the registry of this court.

### B. Entitlement to the Contract Funds

In *United States Fidelity & Guaranty Co. v. Housing Auth. of the Town of Berwick*, 557 F.2d 482, 484 (5th Cir. 1977), the United States Court of Appeals for the Fifth Circuit affirmed this Court's finding that a surety who paid laborers and materialmen under a payment bond "was subrogated to the rights of laborers, materialmen, and suppliers of [the contractor] whose claims [the surety] paid, and that the rights of those original. . . creditors are superior to those of [a creditor holding a perfected security interest]." The court went on to add, "It is also true, however, that [the surety] is subrogated to the priority statutory position of the public owner with respect to the contract fund." *Id.* The court held that because the public owner of the contract had the right to use the retained contract funds to pay the claims of laborers and materialmen in the event that the surety did not no debt from the public owner to the contractor arose before all claims were paid. *Id.* at 485. As such, no outside creditor of the contractor could claim entitlement to the contract retainage. *Id.*

In this case, Hartford, as surety, paid $423,663.79 to subcontractors, suppliers, lessors,

and materialmen for work performed and material provided on the Project.  Affidavit of Laura Mahler, Rec. Doc. 65-2, p. 3.  The contract retainage currently deposited in the registry of the Court totals $222,171.50.  Because MDI, as contractor, failed to pay these claims, Audubon was entitled to use the contract retainage to pay them if Hartford had not stepped in to do so.  Because Hartford paid the claims, it is subrogated to the rights of Audubon and the subcontractors, suppliers, lessors and materialmen whose claims it paid.  Thus, no debt from Audubon to MDI ever arose regarding these funds.  Because MDI was never entitled to these funds, no creditor of MDI has a valid claim to them.  Rather, Hartford is entitled the funds as the subrogee of Audubon and the laborers and materialmen who had claims to the funds.

### C. Entitlement to Attorney's Fees

Hartford claims that it is entitled to attorney's fees under Louisiana Revised Statute 38:2191, which states that "[a]ny public entity failing to make any final payments after formal acceptance and within forty-five days following the receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney's fees."  La. Rev. Stat. Ann. §38:2191 (2011).  The Louisiana Fifth Circuit Court of Appeal interpreted this provision of the statute when confronted with a similar request for attorney's fees in *C.R. Pittman Construction Co., Inc. v. Jefferson Parish Dept. Of Water and Public Works*.  989 So.2d 149 (La. Ct. App. 5 Cir 2008).  In *Pittman*, a public entity received a clear lien and privilege certificate for a completed project after being served with notice of a lien against the project.  989 So.2d 149, at 151.  In its answer to an action instituted by the contractor after failing to pay within the time designated by the statute, the public entity instituted a concursus proceeding, placing the disputed contract retainage into the registry of the court.  *Id.*  The Louisiana Fifth Circuit Court of Appeal affirmed the trial court's

decision to deny attorney's fees because while the public entity received a clear lien certificate, the public entity knew of the existence of a lien against the project. *Id.* at 154.  The court noted that "had the [public entity] ignored the existence of the lien and paid the [contractor] the retainage, the [public entity] would have exposed itself to far greater liability." *Id.*  The United States Court of Appeals for the Third Circuit has noted that "a stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim." *Prudential Ins. Co. of Am. V. Hovis*, 553 F.3d 258, 265 (3d Cir. 2009) (*quoting Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957)) (*internal quotation marks omitted*).

Here, Audubon was faced with a similar problem.  While Audubon received a clear lien and privilege certificate on June 14, 2011, Rec. Doc. 65-1, p. 4, Audubon knew of the IRS's claim to the contract retainage on June 6, 2011.  Rec. Doc. 74-1, p. 2.  Then, on August 12, 2011, within forty-five days of June 14, Audubon received a "Specific Notification" from Investar Bank claiming to have a secured interest in any funds due to MDI.  *Id.*  Like the public entity in *Pittman*, Audubon had a clear lien and privilege but knew of claims asserted by outside parties regarding the contract funds. Audubon cannot be held liable for attorney's fees under these circumstances because the lien certificate was not clear when submitted on June 14, 2011 in light of the IRS's claim to the contract funds.  As such, Hartford's claim for attorney's fees must be denied.

IV.  **CONCLUSION**

Considering the foregoing, **IT IS ORDERED** that the **"Motion for Payment of Contract Funds" (Rec. Doc. 65)** is **GRANTED IN PART** and **DENIED IN PART**.  Hartford's request for contract funds is **GRANTED**; the contract funds, currently deposited in the registry

of the Court, are awarded to Hartford. Hartford's request for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** that Audubon's **"Motion to Dismiss Counterclaim Pursuant to Rule 12(b)(6)" (Rec. Doc. 74)** is **GRANTED**.

New Orleans, Louisiana, this 29th day of January 2012.

_____
**KURT D. ENGELHARDT**
**United States District Judge**